ELLIS K. POWERS, appellant.

*v.*

JOHN M. CANDA, respondent.

An injunction will not be granted to restrain the holder of a legal title to land from proceeding at law to recover possession, when an apparently equitable title was passed in fraud of creditors, and the complainant who claims under it have knowledge of and participated in the fraud.

---

* NOTE.—Whether publicly and falsely charging a wife with adultery or incest is cruelty justifying a divorce, *Farnham* v. *Farnham, 73 Ill. 497; Smith* v. *Smith, 8 Oreg. 100; Wheeler* v. *Wheeler, 53 Iowa 511, 36 Am. Rep. 240; Graft* v. *Graft, 76 Ind. 136; Palmer* v. *Palmer, 45 Mich. 150; Myrick* v. *Myrick, 67 Ga. 771; Cass* v. *Cass, 34 La. Ann. 135; Ward* v. *Ward, 103 Ill. 477; Whitmore* v. *Whitmore, 49 Mich. 417; McMahan* v. *McMahan, 9 Oreg. 525; De Meli* v. *De Meli, 67 How. Pr. 20; Jones* v. *Jones, 60 Tex. 451; Carpenter* v. *Carpenter, 30 Kan. 712, 46 Am. Rep. 408; Thomas* v. *Thomas, 2 Coldw. 123; Folmar* v. *Folmar, 69 Ala. 84.*

As to a false charge of insanity, see *Osterhout* v. *Osterhout, 30 Kan. 746.*— REP.

Powers *v.* Canda.

On appeal from decree of the chancellor, whose opinion is reported in *Canda* v. *Powers, 11 Stew. Eq. 412.*

*Mr. John Linn,* for appellant.

*Mr. H. M. Barrett* and *Mr. John R. Emery,* for respondent.

Bill is filed by Canda, the owner of the equitable title to lands (a farm in Middlesex and Somerset counties), against defendant, Powers, the holder of the legal title, to have the legal title declared invalid, and suits in ejectment which have been brought by defendant against the tenant of complainant in possession of the premises to recover the possession, perpetually enjoined. The general ground upon which the relief is claimed is, that defendant had notice of complainant's equitable title.

The plaintiff's equitable title was derived by conveyances of the premises from William Allen and wife, dated August 4th, 1880.

These are in due form to pass the legal and equitable title of Allen and his wife, but Allen and his wife's title is derived by deeds for the premises from Mrs. Emma A. Totten, wife of John Totten, dated January 11th, 1879, which are defective because executed only by the wife. Mrs. Totten's legal and equitable title to the premises on January 11th, 1879, is not questioned, she having received it from Aitken, a former owner of the premises. At the time of conveyance to complainant, the defect in Allen's legal title was not known to either himself or Allen, and he purchased of Allen, as he supposed, a good title to the premises.

The defendant's legal title is derived by purchase at sheriff's sales in February and March, 1881, under executions issued on a judgment obtained by defendant in the supreme court, on February 24th, 1880, against John Totten and Emma A., his wife, in a suit commenced by attachment issued January 12th, 1879, under which the right, title and interest of Totten and his wife were attached. Mrs. Totten entered an appearance in the suit and the case was tried at December term, 1879, of the Middlesex circuit.

The complainant claims that the defendant's writ of attachment was issued subsequent to the execution of the deed from Mrs.

Totten to Allen and wife, and that before the recovery of his judgment, defendant had notice of Allen's and complainant's purchase. The defendant sets up in his answer three defences, viz., (1) that the deed to Allen was not executed till after the writ of attachment was issued, and was fraudulently antedated ; (2) that he received no notice of complainant's or Allen's title until after the recovery of his judgment, and (3) that all the deeds, those to Canda as well as Allen and wife, were made with intent to defraud the creditors of Mrs. Totten, and are fraudulent and void as against defendant.

As against Totten and wife the legal title of complainant was perfected by their new deeds directly to him, made on April 30th, 1881, after discovery of the defect, and the question as to complainant's rights relates only to their priority over those of the defendant.

I. It was the intention of the parties (Canda, and Allen and wife) that Canda was to receive a good title, and the defect in the legal title of Allen was the result of mistake as to the New Jersey law, upon the part of the New York solicitor who prepared the deeds.

II. The defendant's title, under the attachment (and so far as the same depends upon the seizure under that writ), is subject to all prior conveyances, either legal or equitable. *Rev.* "*Attachment*" *p. 45 § 18; Campion* v. *Kille, 1 McCart. 234; S. C. on appeal, 2 McCart. 476, 500*—deciding that priority over unrecorded mortgages is not given to attachments.

III. As to his claim set up by defendant that the attachment was issued before the deed to Allen, which defendant alleges to have been fraudulently antedated, he offers no proof whatever, and it is completely disproved by complainant's witnesses, which confirm the evidence of the certificate of acknowledgment.

There is no pretence or claim that Canda knew of any fraud or error in the date of the deed, or of the acknowledgment, and, therefore, as to him, the date of the acknowledgment, as shown by the certificate, could not be contradicted, even by the officer or the parties themselves. See *Homœopathic Ins. Co.* v. *Mar-*

*shall,* *5 Stew. Eq. 103* (Chancellor Runyon, 1880), where it was held that, as against a *bona fide* purchaser, a married woman could not contradict the certificate of the officer as to her acquaintance with the contents of the deed.

IV. Defendant's legal title, as resting upon his judgment, is subject to complainant's equitable title, because he had notice of it before the recovery of the judgment.

As to effect of notice. A person acquiring the legal title with notice of prior equitable title or rights, holds subject to them and in trust for the person equitably entitled. *Gale* v. *Morris,* *2 Stew. Eq. 222 ; S. C., 3 Stew. Eq. 285 ; Condit* v. *Wilson, 9 Stew. Eq. 371, 372.*

Defence of want of notice failing, complainant is entitled to decree for relief asked, unless the defendant makes out to the satisfaction of the court the other defences set up in his answer, that the conveyances to Allen and his wife and to Canda, were both fraudulent and void as against him. On this point and as to the legal position which defendant assumes by this claim, I submit,

V. That to sustain his legal title on this ground, it will be necessary for the defendant to establish his case as to both sets of deeds, those to Canda as well as to Allen and wife, for if Canda purchased, in good faith, Allen's title (legal or equitable),. he cannot be affected by any fraud in the deed from Mrs. Totten to his grantors, and must prevail over defendant's title. *Phelps* v. *Morrison, 10 C. E. Gr. 538,* decides this precise point, and is. followed in *De Witt* v. *Van Sickle, 2 Stew. Eq. 209, 214 ; Gales.* v. *Morris, Id. 222, 224.*

As to a further burden on defendant in relation to his proofs, it being shown that both sets of conveyances were made upon valuable consideration, an intent to defraud Mrs. Totten's creditors, on the part of both Canda and Allen, must be made to appear. *Haston* v. *Castner, 4 Stew. Eq. 697, 705 ;* Chief-Justice Beasley (Ct. Err. and App.) states the rule.

VI. As to the deed from Allen and wife to Canda, defendant offers no proof to attack it, and in point of fact it was proved.

beyond dispute a fair and *bona fide* purchase for a valuable consideration.

The consideration for it was the release and discharge of Allen from liability on three of his notes held by Canda, taken in payment on account of a debt *bona fide* owing from Mrs. Totten to Canda for building-materials sold. Allen, being pressed for payment by suit and otherwise, and being unable to pay, and having no other property, turned over the farm and stock in full payment and discharge of the notes. This is, in law, a sufficient consideration to constitute a *bona fide* purchase. *Traphagen* v. *Hand, 9 Stew. Eq. 384,* and cases cited.

VII. That the deed to Allen and his wife was upon a valuable consideration, has not been shown to be fraudulent, but, on the contrary, was a *bona fide* purchase, made without any intention of defrauding defendant or any of Mrs. Totten's creditors.

The opinion of the court was delivered by

SCUDDER, J.

This bill was filed for relief, and for an injunction to restrain the defendant from proceeding in an ejectment suit in the supreme court against one John Brown, a tenant of Canda, to recover possession of the Smock farm, containing about one hundred and sixty acres, lying in the counties of Middlesex and Somerset. The title under which both the parties claimed was derived from Jane Aitken, who, with her husband, conveyed the same to Emma A. Totten by deed dated January 2d, 1879.

Emma A. Totten executed two deeds to William Allen and Sarah E. Allen, his wife, and her daughter, dated January 11th, 1879. They were recorded January 25th, 1879, in the respective counties. John Totten, the husband of Emma A. Totten, did not join in the execution of these conveyances. William Allen and Sarah E. Allen, by deeds duly executed, conveyed the same premises to the complainant, Canda. These deeds were dated August 4th, 1880.

The defendant, Ellis K. Powers, derives his title from a writ of attachment in the supreme court, issued January 12th, 1879,

Powers v. Canda.

against Emma A. Totten and John Totten, her husband, which was levied on the farm, stock and goods thereon. She appeared and defended the suit, and judgment was obtained against her on February 24th, 1880, for $2,903.93. Under executions issued on this judgment to the sheriffs of Middlesex and of Somerset respectively, the property attached was sold, and the defendant in this action, Ellis K. Powers, became the purchaser and took title under deeds dated March 22d, 1881, and February 26th, 1881, from said sheriffs. The defendant was notified before his purchase at said sales of the title claimed by the complainant, Canda, and bought with such knowledge. The bill was filed in the court of chancery because the two deeds by Emma A. Totten to William Allen and Sarah E. Allen, his wife, were defective in execution, her husband, John Totten, not having joined her in making them, and the acknowledgment of one deed was imperfect. It was charged in the bill that by reason of these defects Allen and his wife took only an equitable title to the lands described therein. The parties to these deeds resided in the state of New York, and the conveyances were made, as it is alleged, according to the laws of that state, which they supposed were also applicable in this state. John Totten testifies that he was present and ready to join his wife in making the conveyances but was informed that it was unnecessary.

By deeds dated April 30th, 1881, John Totten, and Emma A., his wife, conveyed the lands, in due form, to John M. Canda, with the intention to perfect his title. These last-named conveyances being subsequent to the sheriff's deeds to the defendant, Powers, he asserts that they are of no legal effect as to him. As to the prior deeds by Emma A. Totten to Allen and his wife, and from Allen and wife to the complainant, Canda, he charges that they were fraudulent, and conveyed no title as against him as creditor of Emma A. Totten, whose debt was existing at the time of these conveyances.

The issue thus made is merely one of fact. Were the several deeds by which it is claimed the title passed from Emma A. Totten to Canda, fraudulent in fact, and did he take it not as a bona fide purchaser, but with knowledge of such fraud? If he

did, then they conveyed to him neither a legal nor equitable title against this defendant, who should not be restrained, by injunction, from proceeding with his action of ejectment to obtain possession of the lands and premises described in his deeds. If he bought in good faith, then his title, though informal, will be prior and good in equity against the defendant, and he will be entitled to the relief prayed, and an injunction to restrain the action at law for possession. I will refer to only a few of the facts appearing in the pleadings and proofs, which, in my judgment, determine this question. The deeds from Emma A. Totten to Allen and wife, the latter being the daughter of Mrs. Totten, are dated January 11th, 1879, the day before Powers issued his attachment. They purport to be acknowledged on the same day, and were recorded January 25th, 1879. The certificates of the clerk of the city and county of New York that the notary who took the acknowledgments was duly qualified, and that the deeds were executed and acknowledged according to the laws of the state of New York, are also dated January 25th, 1879, the date of recording in this state. It is charged by the defendant, Powers, that this, with other facts, establishes that the deeds and acknowledgments were antedated, so as to appear to have been executed before this writ of attachment was issued. But of this there is not sufficient proof, although the delay in the registry of the deeds, which it is testified, were left with the attorney to be recorded, is some cause for suspicion in view of other facts in the case.

The consideration named in the deed for the lands lying in Middlesex county is the sum of $1, and they are conveyed "subject to the present mortgages thereon," without naming the amount. The other deed for the parcel of the farm-lands lying in Somerset county is for the consideration of $1. It is added to the description, " and the same are now conveyed subject to a certain mortgage for $6,144, held by the New Brunswick Savings Institution, which the said parties of the second part hereby assume and agree to pay as and for part of the consideration of this deed hereinbefore expressed, together with all stock, crops and implements now on said premises." The entire farm is

valued by some witnesses as worth, at the time of transfer, $11,000 or $12,000; others put it less, and say it is not worth more than the encumbrance.   The amount of the mortgage to the New Brunswick Savings Institution is incorrectly stated, as the evidence shows that it was, at the time, $5,000.   The property must have been valued by the parties at more than the amount of the mortgage, for William Allen gave three notes of $1,000 each to Mrs. Totten, bearing the date of the conveyance, as she and Allen both testify, and Totten says these were part of the consideration of the deeds.   Besides these, Allen says he paid $200 in cash to Mrs. Totten.   At that time Allen was the foreman of a sash, blind and moulding-mill in the city of New York, with a moderate salary, and without the means to pay even one of these notes.   He says he relied on his brother to help him, and he afterwards refused to do so.   Brown, the defendant in the ejectment suit, was the tenant under Totten prior to the conveyance to Allen and wife, and has continued in possession since up to the present time, without payment of rent to Allen or anyone, so far as it appears.   Totten seems to have had more produce off the farm, and more control of it, than Allen, who merely went with Totten, soon after the conveyances to him and his wife, to the farm, and there notified Brown, formally, that he was the owner at the time of the transfer by Emma A. Totten to Allen and wife.   John Totten, her husband, was carrying on the business of contractor and builder in the city of New York, in his wife's name, and had been doing so for some time, because, as he testifies, there was a judgment against him, and creditors were likely to press him.   There is no pretence that his wife had any separate property or capital, or took any actual part in the management of the business; her name was used as a form to cover the transactions for the husband's benefit as security, and so the title of the farm and all on it were held. Totten's lawyer, who prepared the deeds to Allen and wife, and the subsequent conveyance from Allen and wife to Canda, was, at the time, conducting proceedings in court to have him discharged as a bankrupt.   He had been, for several years, the legal adviser and friend of both Canda and Totten, and knew

their business affairs, and that they were very friendly, and had been so for years. Totten had bought materials for his business from Canda, both in his own and his wife's name, to a large amount, and had transferred mortgages and securities to him in payment, both employing the same lawyer who prepared all these last papers and deeds for them.

These three notes given by Allen were assigned to Canda, on account, it is said, of Mrs. Totten's indebtedness to him, and, being unpaid, he brought suit on them against Allen. He knew he could recover nothing of Allen, who had no means but his salary. In settlement of this suit, they testify that Allen and his wife executed the two deeds to Canda for this farm : one, dated August 4th, 1880, states the consideration of $7,000, and conveys a part, subject to the mortgage held by the New Brunswick Savings Institution, upon which there was due and unpaid, as it recites, the sum of $5,000; the other conveys another parcel for the consideration of $1,000, to be delivered in building materials, and the further sum of $1. It does not appear that these building materials were ever delivered to Allen or his wife, or that they needed them. Totten was the person who was engaged in building. Subsequently, on April 30th, 1881, Totten and wife, to perfect the title, executed formal deeds to Canda for all these premises, for the consideration of $1. Except in these last deeds, there is not a true and honest statement of the consideration in any of the conveyances between these parties, nor was anything paid except the $200, said to have been paid by Allen to Mrs. Totten. By the deeds last above cited, and the prior imperfect conveyances to Allen and wife, and their defective title transferred to Canda, it is claimed he has both an equitable and legal estate, which is superior to the title which Powers took for his judgment debt, with the sales under execution and sheriffs' deeds thereon. A careful examination of the testimony, with its inconsistency and contradictions and the statements and conduct of the principal witnesses on the part of the complainant, have led to the belief that these deeds are the cover by which a fraudulent attempt has been made to put this farm in controversy into the hands of Canda, who has been a personal

friend of Totten, and desirous to serve him.   A fact which shows how willing and accommodating Mr. Canda was in this transaction is, that, although the notes from Allen to Mrs. Totten (for $3,000) were transferred to him with her endorsement, and she only is said to have had means to pay them, they were not protested to hold her, nor was she sued with Allen when action was brought for their collection.   The suit against Allen alone was a mere feint to give some plausibility to the transaction, and without any expectation of recovering the money from him. They say that protest was waived, but admit that she was not sued, nor does it appear that payment was demanded of her by Canda at or after maturity.   Another fact in the case is, that Canda has never had any actual possession of the farm, nor has he made any agreement with the tenant for rent to be paid him. Totten appears to have control of the tenant and of the property, as he always has done.   Allen's three notes, which are said to have been the consideration for the farm, still remain in Canda's possession, and were not surrendered when the conveyances were made to him; he holds Mrs. Totten liable for his original claim against her, on account, as surety on Allen's notes, which he testifies was his main reliance in taking them, and has title to the farm by deeds from all these parties, by which he seeks to keep Totten's creditors at bay.   Canda's connection with, and knowledge of, all these transactions and their purport and effect in hindering other creditors, clearly appears in the whole case, and more particularly, I think, in the testimony of Mr. Smith, the counsel who conducted all the business for them, who, in describing how the conveyance was made to Allen, and the notes transferred to Canda, says :

" It was a joint, continuous, connected transaction from the beginning to the end, between Mrs. Totten and Allen, and Allen and Canda."

The clear, distinct impression and persuasion made by the evidence is that Mr. Totten managed the whole matter and all the parties to suit his interest and designs.   His wife conducted the business in his name to cheat and deceive his creditors ; the title for the farm was taken from Jane Aitken in his wife's name,

without any consideration paid by her from her own means, for the same purpose, and so on to the end of the affair his is the controlling spirit.    Canda, as a business man intimate with Totten, must have known the crookedness of the whole transaction.    All has been done with the purpose to prevent the recovery of the large debt owed to the defendant Powers, whom he now seeks, through Canda, to enjoin, and hinder other creditors whom he has defeated by his discharge in bankruptcy.

These conveyances, under which the complainant claims title, are either voluntary, and are void, with respect to the debt of this defendant, which existed at the date of these transfers, by force of the statute relating to frauds and perjuries ; or, if any consideration were given for either conveyance, the purpose of all and their effect were frauds on creditors, known to the complainant at and before the time of the transfer to him—these will avoid his deeds against this defendant.    *Haston* v. *Castner,* *4 Stew. Eq. 697.*

The decree will be reversed.

*Decree unanimously reversed.*